UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-224(2) (NEB/TNL)

UNITED STATES OF AMERICA,

        Plaintiff,                       **PLEA AGREEMENT AND**
                                               **SENTENCING STIPULATIONS**

v.

SAHRA MOHAMED NUR,

        Defendant.

The United States of America and defendant SAHRA MOHAMED NUR (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter the "United States" or the "Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges**. The defendant agrees to plead guilty to Count 1 of the Indictment, which charges the defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371 and Count 21 of the Indictment, which charges the defendant with money laundering, in violation of 18 U.S.C. § 1957. The defendant fully understands the nature and elements of the crimes with which she has been charged. At the time of sentencing, the Government agrees to move to dismiss the remaining counts of the Indictment against the defendant.

2.    **Factual Basis**. The defendant is pleading guilty because she is in fact guilty of Count 1 and Count 21 of the Indictment. In pleading guilty, the defendant

1



admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

## Count 1

From December 2020 through January 2022, Nur knowingly and willfully conspired with others to participate in a fraudulent scheme to obtain and misappropriate millions of dollars in Federal Child Nutrition Program funds that were intended as reimbursements for the cost of serving meals to underprivileged children.

Nur was one of the owners and operators of S & S Catering Inc. S & S Catering was a for-profit restaurant and catering business that opened in 2018 and whose business included participation as a distribution site, and later as a vendor for other sites, serving food in the Federal Child Nutrition Program.

Between September 2020 and April 2021, Nur and S & S Catering claimed to have served over 1.2 million meals to children through the federal food program. Although S & S Catering cooked and served some meals, it only served a fraction of the meals it claimed and for which it received reimbursement. In all, S & S Catering received more than $6.8 million in meal service payments from sponsors.

S & S Catering also acted as a vendor, purporting to provide packaged meals and food to other distribution sites that received reimbursements from the Federal Child Nutrition Program. The co-conspirators who created these distribution sites submitted applications to participate in the Federal Child Nutrition Program under

the sponsorship of Feeding Our Future. Many sites purported to start serving meals to thousands of children a day just days or weeks after they were formed.

The sites contracted with S & S Catering to act as a vendor to purportedly provide the food that the sites were to serve or deliver to children under the federal food program. In reality, the sites' claims to be serving meals to thousands of children a day, seven days a week, were grossly inflated.

S & S Catering sent invoices directly to the distribution sites, which charged the sites for purportedly providing food served as part of the program. The sites then paid the S & S Catering invoices with federal food program funds they received directly from Feeding Our Future. S & S Catering then transferred some of the fraudulently obtained funds back to the co-conspirators.

Nur caused money to be transferred to co-conspirators through shell companies created and used to receive and launder the proceeds of the fraud scheme. She also caused money to be transferred from the S & S Catering accounts received as federal food program reimbursements to her personal bank account or other accounts which she controlled.

Between approximately December 2020 and December 2021, the sites to whom S & S Catering purported to provide food claimed they provided more than 8 million meals as a vendor to sites participating in the federal food program. The number of meals that S & S Catering purportedly provided to sites as a vendor was inflated and S & S Catering only provided a fraction of the meals and food for which it invoiced

sites. S & S Catering received over $10 million in payments from companies that acted as sites for the federal food program in the course of the fraud scheme.

In total, Nur and her co-conspirators received more than $16.5 million in reimbursements from Feeding Our Future.

### Count 21

On or about August 26, 2021, in the State and District of Minnesota and elsewhere, Nur knowingly engaged and attempted to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, in violation of Title 18, United States Code, Section 1957, namely the transfer of funds towards the purchase of the commercial building located at 301-309 East Lake Street in Minneapolis, Minnesota, such property having been derived from specified unlawful activities, namely, wire fraud, in violation of Title 18, United States Code, Section 1343.

More specifically, in August 2021, Nur caused to be transferred approximately $2.4 million in funds received as federal food program reimbursements towards the purchase of the commercial building located at 301-309 East Lake Street in Minneapolis, Minnesota. That building was the location of S & S Catering, as well as numerous other entities that were involved in the fraudulent scheme. Prior to that point, S & S Catering was renting the space.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of

this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that she has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that she has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent her. The defendant understands that she has the right to persist in a plea of not guilty and, if she does so, she would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences.** The defendant understands that as a result of her conviction, she could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6. **Statutory Penalties**. The defendant understands that Count 1 of the Indictment (conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371) is a felony offense that carries the following statutory penalties:

a. a maximum of 5 years in prison;

b. a supervised release term of not more than 3 years;

c. a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greatest;

d. restitution as agreed to by the parties in this agreement; and

e. a mandatory special assessment of $100.

The defendant understands that Count 21 of the Indictment (money laundering, in violation of 18 U.S.C. § 1957) is a felony offense that carries the following statutory penalties:

a. a maximum of 10 years in prison;

b. a supervised release term of not more than 3 years;

c. a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greatest;

d. restitution as agreed to by the parties in this agreement; and

e. a mandatory special assessment of $100.

7. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the

appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations for Count 1 and Count 21 of the Indictment:

    a.    <u>Base Offense Level</u>. The parties agree that for Count 1 of the Indictment, the base offense level is 6. U.S.S.G. § 2B1.1(a)(1).

          The parties agree that for Count 21 of the Indictment, the base offense level is the offense level for the underlying offense from which the laundered funds were derived, pursuant to U.S.S.G. § 2S1.1(a)(1). Therefore, the base offense level for Count 21 is 26 as calculated under Count One.

    b.    <u>Specific Offense Characteristics</u>. The parties agree that for Count 1 of the Indictment, a 20-level enhancement applies pursuant to Guidelines § 2B1.1(b)(1)(I) because the loss exceed $9.5 million but was less than $25 million. The parties agree that no other specific offense adjustments apply.

          The parties agree that for Count 21 of the Indictment, a one-level enhancement applies pursuant to U.S.S.G. § 2S1.1(b)(2)(A) because defendant was convicted under 18 U.S.C. § 1957.

    c.    <u>Chapter 3 Adjustments</u>. The parties agree that Count 1 and Count 21 of the Indictment are grouped together into a single group because both counts embody conduct that is treated as a specific offense characteristic in the guideline applicable to the other count. U.S.S.G. § 3D1.2(c). Therefore, the offense level applicable to the group will be the highest offense level of the counts in the group, which would be 27. The parties agree that apart from the above, no other Chapter 3 adjustments apply.

    d.    <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of her intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change

        of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw her guilty plea after it is entered.

    e.    <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within her criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and she will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

    f.    <u>Guidelines Range</u>. If the adjusted offense level is 24, and the criminal history category is I, the Sentencing Guidelines range is 51 to 63 months of imprisonment.

    g.    <u>Fine Range</u>. If the adjusted offense level is 24, the Sentencing Guidelines fine range is $20,000 to $200,000. U.S.S.G. § 5E1.2(c)(3).

8.    **Revocation of Supervised Release**. The defendant understands that if she were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

9. **Potential New Zero-Point Offender Guidelines Provision Under U.S.S.G. § 4C1.1.** The Court must apply the sentencing Guidelines Manual in effect as of the date of sentencing. U.S.S.G. § 1B1.11(a). However, the U.S. Sentencing Commission recently proposed a new provision of the United States Sentencing Guidelines that will call for a 2-level downward adjustment for defendants with zero criminal history points under some circumstances. Specifically, the proposed provision, § 4C1.1, would provide a decrease of 2 levels from the offense level determined under Chapters Two and Three if the Defendant meets all of the following criteria: (1) the Defendant did not receive any criminal history points from Chapter Four, Part A; (2) the Defendant did not receive an adjustment under §3A1.4 (Terrorism); (3) the Defendant did not use violence or credible threats of violence in connection with the offense; (4) the offense did not result in death or serious bodily injury; (5) the instant offense of conviction is not a sex offense; (6) the Defendant did not personally cause substantial financial hardship; (7) the Defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights); (9) the Defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and (10) the Defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as

defined in 21 U.S.C. § 848. The Sentencing Commission has published this new provision for retroactivity consideration.

The proposed new provision will not take effect—if at all—until November 1, 2023. If the Defendant is sentenced after the new provision takes effect, the parties believe he will qualify for the 0-Point Offender Adjustment under § 4C1.1. With that reduction, the Defendant's total offense level is 22, and the Criminal History Category is I, resulting in a Guidelines range of 41 to 51 months of imprisonment.

If the Defendant is sentenced before November 1, 2023, the Defendant may seek a variance from his otherwise-applicable Guidelines range based on the proposed U.S.S.G. § 4C1.1. The government agrees to support the variance and to ask the Court to sentence the defendant as if U.S.S.G. § 4C1.1 had taken effect on the express condition that the defendant agrees that he will not later seek, by any means, including through a motion pursuant to 18 U.S.C. § 3582(c), a further reduced sentence on the basis that the new § 4C1.1 was inapplicable at the time his sentence was imposed, even if the proposed version of § 4C1.1 is made retroactive.

This provision will not apply if, between now and the date of sentencing, the proposed amendments are rejected by proper authority or withdrawn by the U.S. Sentencing Commission.

10.   **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination

regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

11. **Agreements as to Sentencing Recommendation.** The parties are free to recommend whatever sentence they deem appropriate. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw her guilty plea.

12. **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

13. **Restitution Agreement.** The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of her crimes. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Indictment. Defendant agrees that she owes restitution in the amount of $5,000,240.

14. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement, agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets, and expressly authorizes the United States to obtain a credit report on the defendant to evaluate her ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

15. **Forfeiture.** Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to Count 1 of the Indictment.

Defendant agrees that the specific property subject to forfeiture includes but is not limited to:

   a. The net proceeds from the sale of the real property (as approved by ECF No. 116) located at 301-309 (odd-numbered addresses) East Lake Street, Minneapolis, Minnesota, legally described as:

   Lots 42 to 47, State Addition to Minneapolis according to the recorded plat thereof together with all hereditaments and appurtenances with property tax ID number 03-028-24-11-0093

b. The net proceeds from the sale of the real property (as approved by ECF No. 116) located at 311-319 (odd-numbered addresses) East Lake Street, Minneapolis, Minnesota, legally described as:

Lots 38, 39, 40 and 41, State Addition to Minneapolis according to the recorded plat thereof together with all hereditaments and appurtenances with property tax ID number 03-028-24-11-0092;

c. The net proceeds from the sale of the real property (as approved by ECF No. 116) located at 3018 3rd Avenue South, Minneapolis, Minnesota;

d. The real property located at 3401, 3415 and 3441 Hiawatha Avenue, Minneapolis, Minnesota, or the net proceeds from the sale of this property;

e. The real property located at 3463 Hiawatha Avenue, Minneapolis, Minnesota, or the net proceeds from the sale of this property;

f. $1,641.00 U.S. Currency from various locations within the residence at 3415 Fordham Court, St. Anthony, Minnesota on January 20, 2022;

g. Louis Vuitton Damier Ebene Speedy handbag, seized from 3415 Fordham Court, St. Anthony, Minnesota on January 20, 2022;

h. Prada black leather handbag, seized from 3415 Fordham Court, St. Anthony, Minnesota on January 20, 2022;

i. Louis Vuitton Monogram Canvas Babylone Tote, seized from 3415 Fordham Court, St. Anthony, Minnesota on January 20, 2022;

j. Counterfeit Gucci black tote, seized from 3415 Fordham Court, St. Anthony, Minnesota on January 20, 2022;

k. Tory Burch Kira Chevron Glazed Convertible Shoulder Bag, seized from 3415 Fordham Court, St. Anthony, Minnesota on January 20, 2022;

l. Counterfeit base yellow metal replica Hermes watch; 27mm case, cream dial, steel bracelet with rhinestones, quartz movement, seized from 3415 Fordham Court, St. Anthony, Minnesota on January 20, 2022;

    m. . 21k yellow gold stamped ring; size 5.5; 7.4 grams, seized from 3415 Fordham Court, St. Anthony, Minnesota on January 20, 2022;

    n. 21k yellow gold stamped bib style necklace; 16 inches long; 60.6 gram, seized from 3415 Fordham Court, St. Anthony, Minnesota on January 20, 2022;

    o. 21k yellow gold stamped earrings; 19.6 grams, seized from 3415 Fordham Court, St. Anthony, Minnesota on January 20, 2022;

    p. 21k yellow gold stamped earrings; 18.8 grams, seized from 3415 Fordham Court, St. Anthony, Minnesota on January 20, 2022;

    q. 21k yellow gold tested necklace; 17 inches long; 19.8 grams, seized from 3415 Fordham Court, St. Anthony, Minnesota on January 20, 2022.

The Defendant agrees that the property described above is subject to forfeiture because it constitutes or is derived from proceeds traceable to Count 1 of the Indictment, and that the United States may forfeit the property through civil or criminal judicial forfeiture proceedings. The United States reserves the right to forfeit additional directly forfeitable property and substitute property.

Defendant consents to the entry of a money judgment forfeiture in the amount of $5,000,240, which represents the amount of proceeds she obtained from the wire fraud scheme alleged in Count One of the Indictment. Defendant will be given credit against the forfeiture judgment for the net value of all assets forfeited from her in connection with this case.

16. **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the

defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the high end of the Guidelines range as determined by the Court, and an appeal by the government of the substantive reasonableness of a term of imprisonment below the low end of the Guidelines range as determined by the Court.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

17. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552 and 552A.

18. **Complete Agreement**. The defendant acknowledges that she has read this plea agreement and has carefully reviewed each provision with her attorney. The defendant further acknowledges that she understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the defendant.

ANDREW M. LUGER
United States Attorney

Date: 9/7/23

BY: JOSEPH H. THOMPSON
HARRY M. JACOBS
MATTHEW S. EBERT
CHELSEA A. WALCKER
Assistant United States Attorney

Date: 9/7/23

SAHRA MOHAMED NUR
Defendant

Date: Sept. 7th, 2023

A.L. BROWN
Counsel for Defendant